# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

RODERICK A. DIVINS,                    :

      Plaintiff,                    :

                                Case No. 3:11cv00033

  vs.                    :

                                District Judge Thomas M. Rose

MICHAEL J. ASTRUE,                    :    Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,               :

      Defendant.                    :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

Plaintiff Roderick A. Divins brings this case challenging the Social Security

Administration's denial of his application for Supplemental Security Income ("SSI") filed

on October 10, 2007.  He claims disability from disc damage in his neck, surgery on both

shoulders, asthma, and a head injury.  (Doc. # 6-6, *Page ID#* 192).  After his application

was denied during the initial administrative proceedings, Plaintiff was provided a hearing

before Administrative Law Judge ("ALJ") Amelia G. Lombardo.  On August 12, 2010,

the ALJ issued a decision concluding that Plaintiff was not under a "disability" within the

meaning of the Social Security Act, and was therefore not eligible for SSI.  (Doc. # 6-2,

*Page ID##* 54-74). The ALJ's decision and the resulting denial of benefits became the

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. # 9), the Commissioner's Memorandum in Opposition (Doc. # 11), the administrative record (Docs. # 6 and # 7), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and granting him benefits because the ALJ's decision was not based on substantial evidence. In the alternative, Plaintiff seeks an order remanding the ALJ's decision to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II. BACKGROUND

Plaintiff was 53 years old at the time of the administrative decision. Thus, he is considered to be "closely approaching advanced age" for purposes of resolving his SSI claim. *See* 20 C.F.R. § 416.963(d); *see also* Doc. # 6-2, *Page ID#* 72; Doc. # 6-5, *Page ID#* 166. Plaintiff has a high school education, with two years of college, *see* 20 C.F.R. § 416.964(b)(4); *see also* Doc. # 6-6, *Page ID#* 246, and has past relevant work as a building maintenance repairer, meat clerk at a grocery store, and painter. (Doc. # 6-6, *Page ID##* 221-25, 239).

Plaintiff testified at the administrative hearing that he was unable to work due to pain and numbness radiating from his shoulders, down his arms, and into his hands, despite bilateral shoulder surgery in 1998. (Doc. # 6-2, *Page ID##* 85-86). Plaintiff also

testified that he continued to have ongoing constant headaches. (*Id.*, *Page ID##* 86-88). He noted that light made his headaches worse and he had to wear dark glasses. (*Id.*, *Page ID#* 88). Plaintiff further testified that he experienced neck pain, foot pain, and low back pain. (*Id.*, *Page ID##* 88, 90).

Plaintiff estimated that he could lift approximately 25 pounds. (Doc. # 6-2, *Page ID#* 88). He could only walk a block due to a lack of stamina and recent foot surgery. (*Id.*, *Page ID#* 89). Plaintiff testified he could prepare simple meals for himself, do his own laundry, and go to the grocery store. (*Id.*, *Page ID#* 90). At the time of the hearing, he did not have a driver's license. (*Id.*, *Page ID#* 85).

Plaintiff testified that he did not leave his apartment unless he had a doctor's appointment, to go get something to eat, or to check his mail. (Doc. # 6-2, *Page ID#* 91). On a typical day, he testified that he got up, took his medication, and watched television. (*Id.*).

At the time of the hearing, Plaintiff testified that he was not receiving mental health treatment because he did not like to go out of the house unless he absolutely had to. (Doc. # 6-2, *Page ID#* 89). In the year prior to the hearing, he obtained counseling at the pain management center for depression and anxiety. (*Id.*). Plaintiff felt his depression and anxiety began after his head injury. (*Id.*).

Turning to other evidence, the parties have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence which eliminates

the need for a repeated description here.  *See* Doc. # 9 at 3-11; Doc. # 11 at 2-10.  Where

applicable, the Court will identify the medical evidence relevant to its decision.

## III.    THE "DISABILITY" REQUIREMENT AND ADMINISTRATIVE REVIEW

### A.    Applicable Standards

The Social Security Administration provides SSI to indigent individuals, subject to

several eligibility requirements.  Chief among these, for purposes of this case, is the

"disability" requirement.  To receive SSI, an applicant must be a "disabled individual."

42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase

"disabled individual" – as defined by the Social Security Act – has specialized meaning

of limited scope.  It encompasses only those who suffer from a medically determinable

physical or mental impairment severe enough to prevent them from engaging in

substantial gainful activity.  42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

An SSI applicant bears the ultimate burden of establishing that he or she is under a

disability.  *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir.

1992).

### B.    Social Security Regulations

Social Security Regulations require ALJs to resolve a disability claim through a

five-Step sequential evaluation of the evidence.  *See* Doc. # 6-2, *Page ID*## 54-56; *see*

*also* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any Step terminates the

ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully

considered, the sequential review considers and answers five questions:

1.      Is the claimant engaged in substantial gainful activity?

2.      Does the claimant suffer from one or more severe impairments?

3.      Do the claimant's severe impairments, alone or in combination, meet
        or equal the criteria of an impairment set forth in the Commissioner's
        Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's residual functional capacity, can the
        claimant perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and
        residual functional capacity, can the claimant perform other work
        available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

### C.      ALJ Lombardo's Decision

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff has not engaged

in substantial gainful activity since October 10, 2007, the alleged onset date.  (Doc. # 6-2,

*Page ID#* 56).

The ALJ found at Step 2 that Plaintiff has the severe impairments of cervical

degenerative disc disease, headaches, a cognitive disorder, anxiety, and depression.  (*Id.*).

The ALJ determined that Plaintiff's shoulder condition, shortness of breath, bilateral knee

pain, right ankle pain, high blood pressure, bilateral carpal tunnel syndrome, and left foot

pain, considered singly and in combination, do not cause more than minimal limitations in Plaintiff's ability to perform basic work-related activities and, are therefore, nonsevere. (*Id., Page ID##* 57-59). The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4. (*Id., Page ID#* 59).

At Step 4, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium exertional work. (*Id.*, *Page ID#* 60). The ALJ found that Plaintiff had the mental limitations of unskilled, low-stress work, defined as no assembly line production quotas, no fast-paced work, and only minimal contact with the general public. (*Id.*). The ALJ further determined that Plaintiff's allegations of disability are less than credible. (*Id.*, *Page ID#* 61).

The ALJ next found that Plaintiff is not capable of performing his past relevant work as a building maintenance repairer. (Doc. # 6-2, *Page ID#* 72). The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (*Id.*, *Page ID#* 73). This assessment, along with the ALJ's findings throughout her sequential evaluation, led her to ultimately conclude that Plaintiff was not under a disability, and therefore not eligible for SSI. (*Id.*, *Page ID#* 74).

IV.     **JUDICIAL REVIEW**

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by

substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir.

2009); *see Bowen v. Comm'r. of Social Security*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record contains

evidence contrary to those factual findings. *Rogers v. Comm'r. of Social Security*, 486

F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Social Security*, 203 F.3d 388, 389-

90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial

evidence standard is met – that is, "if a 'reasonable mind might accept the relevant

evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner

v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence

consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*,

486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal

criteria, may result in reversal even if the record contains substantial evidence supporting

the ALJ's factual findings. *Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651

(6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "(E)ven if supported by substantial

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541,

546-47 (6th Cir. 2004)).

## V.    DISCUSSION

### A.    <u>Parties' contentions</u>

Plaintiff argues that the ALJ improperly determined his mental RFC because he left out supported limitations as identified by reviewing psychologist, Dr. Orosz.  (Doc. # 9 at 14).  Plaintiff contends that Dr. Orosz's assessment is supported by the opinions of examining physician, Dr. Boerger, and Plaintiff's treating family physician, Dr. Tabatabaian.  (*Id.* at 15).  Plaintiff next argues that the ALJ failed to properly weigh the opinion of Dr. Tabatabaian as to his physical limitations.  (*Id.* at 17).  This is seen, according to Plaintiff, because the ALJ never considered whether the opinion of Dr. Tabatabaian was consistent with, and supported by, other medical evidence of record. (*Id.* at 18).  Plaintiff concludes that the record documents significant findings in the cervical and lumbar spine and other joints that contribute to Plaintiff's inability to sustain even sedentary work, as noted by Dr. Tabatabaian.  (*Id.* at 19).

The Commissioner contends that the ALJ reasonably determined Plaintiff's mental RFC and Plaintiff "makes no coherent argument against the ALJ's mental RFC determination."  (Doc. # 11 at 10).  According to the Commissioner, the vocational expert testified that the number of jobs available to Plaintiff would not change, which established that the ALJ's RFC limitation of minimal contact with the general public was the vocational equivalent of a restriction to minimal contact with others.  (*Id.* at 11).  The Commissioner also contends that the ALJ properly rejected Dr. Tabatabaian's opinions by

finding his opinions unsupported by the record and inconsistent with his treatment records. (*Id.* at 14).

As discussed below, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

**B.** **Medical Source Opinions**

1. Treating Medical Sources

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. *Id.*

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544). More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). Yet the

opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the (Social Security) Act." Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 at *2. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §416.972(d), (f); *see also* Ruling 96-6p at *2-*3.

### 2. Non-Treating Medical Sources

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the (Social Security) Act." SSR 96-6p. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See id.* at *2-*3. The Regulations explain, "in deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 416.927(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 416.927(d) including, at a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 416.972(f); *see also* SSR 96-6p at *2-*3.

C.    **Discussion**

1.    Physical Impairments

Plaintiff claims that the ALJ improperly rejected the opinion of his treating physician, Dr. Tabatabaian.  (Doc. # 9 at 17).  Plaintiff treated with primary care physician, Dr. Tabatabaian, from September 2007 to November 2009.  (Doc. # 7-2, *Page ID##* 520-26, 537-39, 549-52; Doc. # 7-4, *Page ID##* 778-803).  In October 2007, Dr. Tabatabaian found a normal neck, back, and extremity upon examination.  (*Id., Page ID#* 524).  Plaintiff treated with Dr. Tabatabaian for asthma, hypertension, residuals of his subarachnoid hematoma, shoulder and back pain.  (*Id.*).

In November 2007, Dr. Tabatabaian reported that Plaintiff "stated [he] has problems [with] memory, short term memory and that Plaintiff was unable to sit, stand, bend, stoop, lift, or grasp." (Doc. # 7-2, *Page ID#* 522).

In March 2008, Dr. Tabatabaian reported that Plaintiff was unable to concentrate or think clearly.  (Doc. # 7-2, *Page ID##* 537-39).  He opined that Plaintiff was unable to lift, bend, stoop, and grasp due to his shoulder pain and head injury.  (*Id.*).

In response to a questionnaire from the State of Ohio Bureau of Vocational Rehabilitation in May 2008, Dr. Tabatabaian opined that Plaintiff could not work.  (Doc. # 7-4, *Page ID#* 715).  In November 2009, Dr. Tabatabaian completed interrogatories on Plaintiff's behalf.  (Doc. # 7-4, *Page ID##* 789-98).  Dr. Tabatabaian indicated that he treated Plaintiff for hypertension, asthma, high cholesterol, and allergic rhinitis.  (*Id.*,

11

*Page ID#* 790).  Dr. Tabatabaian opined that Plaintiff was "unable to work because shoulder and neck problem physically and unable to work due to mental impairment lack of concentration and memory."  (*Id.*, *Page ID#* 791).  Dr. Tabatabaian did not think that Plaintiff could sustain the mental demands of work on a regular and continuing basis.  (*Id.*, *Page ID##* 792-97).  Dr. Tabatabaian also opined that Plaintiff had marked limitations in his activities of daily living, social functioning, and ability to maintain concentration, persistence or pace.  (*Id.*, *Page ID##* 797-98).

Dr. Tabatabaian also completed a Medical Assessment of Ability To Do Work-Related Activities (Physical) in November 2009.  (Doc. # 7-4, *Page ID##* 799-803).  Dr. Tabatabaian reported that Plaintiff could not lift or carry more than five pounds occasionally.  (*Id.*, *Page ID#* 800).  According to Dr. Tabatabaian, Plaintiff could not sustain any sitting, standing or walking during the work day; and could never perform any postural changes.  (*Id.*).  Handling, fingering, feeling, pushing/pulling, and reaching were all limited due to head injury and shoulder surgery.  (*Id.*, *Page ID#* 801).  Dr. Tabatabaian felt Plaintiff could not be exposed to any environmental pollutants due to his headaches and bronchial asthma.  (*Id.*, *Page ID#* 802).  Dr. Tabatabaian concluded that Plaintiff could not perform even sedentary work on a sustained basis.  (*Id.*, *Page ID#* 803).

It is well-established that the responsibility for weighing the record evidence, including medical source opinions, and resolving conflicts therein, rests with the ALJ.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We ... are presented with the not

uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). *Mullins v. Secretary of Health and Human Services*, 836 F.2d 980, 984 (6th Cir. 1987).

Here, the ALJ weighed Dr. Tabatabaian's opinion in accordance with controlling law, and she reasonably determined that because of his impairments, Plaintiff could do a range of medium work that included a significant number of jobs. (Doc. # 6-2, *Page ID## 60-73*). As noted above, the regulations and case law recognize that the opinion of a physician, including a treating physician, is entitled to great weight only if it is supported by adequate medical data, including medical signs and laboratory findings, and does not conflict with other evidence. 20 C.F.R. § 416.927(d)(2)(3)(4).

While physicians' opinions are considered in the evaluation of disability, the final responsibility for determining a Plaintiff's RFC lies with the ALJ. The determination of a claimant's RFC is not the duty of a physician, but, at the administrative hearing stage, is a legal decision and is a determination that is expressly reserved for the ALJ. 20 C.F.R. §§ 416.927(e)(2), 416.946; *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted).

The ALJ properly recognized that Dr. Tabatabaian was Plaintiff's treating physician since October 2007, and she gave Dr. Tabatabaian's opinion appropriate consideration pursuant to 20 C.F.R. § 416.927, and SSR 96-2p. (Doc. # 6-2, *Page ID# 71*). The ALJ provided good reasons why she did not rely on Dr. Tabatabaian's opinion. The ALJ explained that she reasonably did not give Dr. Tabatabaian's opinion controlling

13

weight or other special weight because it was not supported by documented medically acceptable clinical examinations or diagnostic testing, and was inconsistent with the evidence of record.  (*Id.*).

Indeed, diagnostic testing did not support Dr. Tabatabaian's opinion.  Cervical spine radiographs taken on August 19, 1999, showed degenerative disc disease, degenerative spondylosis, and neuroforaminal encroachment at C6-7 with only mild degenerative disc disease at C5-6, (Doc. # 7-1, *Page ID#* 282), and an x-ray of the cervical spine on February 14, 2003, showed narrowing of the disc space and osteophytes, at C6-7 but was otherwise unremarkable.  (*Id.*, *Page ID#* 292).  Cervical spine imaging on August 20, 2005, showed multilevel degenerative disc disease most prominent at C6-7 (*Id.*, *Page ID#* 393; Doc. # 7-4, *Page ID#* 759), and a CT scan of the cervical spine taken on October 18, 2005, showed moderate spondylosis at C6-7, but with otherwise normal alignment and no evidence of fractures.  (Doc. # 7-1, *Page ID#* 344).  An MRI of the cervical spine taken on March 31, 2006, showed only moderate cervical spondylotic changes, most prominent at C5-6 and C6-7, with only mild to moderate central canal narrowing and moderate to severe neural foraminal narrowing.  (Doc. # 7-1, *Page ID##* 436, 438-40).  Further, an MRI of the cervical spine on February 12, 2009, showed multilevel disc disease with slight disc space narrowing at C6-7, no subluxation, spondylolisthesis, compression deformity, fracture, or abnormal cord signal.  (Doc. # 7-7, *Page ID#* 1040).

The United States Court of Appeals for the Sixth Circuit has affirmed findings that claimants with much more significant impairments were not disabled. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-31 (6th Cir. 1990) (affirming finding of not disabled where claimant had a herniated disc and degenerative arthritis in the spine).

In addition, clinical findings in the record did not support Dr. Tabatabaian's opinion. When Plaintiff presented to the emergency room for a headache on February 6, 2006, he had no musculoskeletal complaints. Further, the emergency room physician, Dr. Quadri, reported that Plaintiff's musculoskeletal examination was normal, and he had normal range of motion of the neck. (Doc. # 7-1, *Page ID#* 421). On February 8, 2006, a musculoskeletal and neurological examination was also normal, and Plaintiff was reported to walk with a normal gait. (Doc. # 7-6, *Page ID#* 901). Emergency room records from June 1, 2006, June 13, 2006, June 26, 2006, and November 6, 2006 note similar findings. (*Id.*, *Page ID##* 862, 877, 886, 894).

A licensed social worker at Grafton Oaks Nursing Center ("Grafton Oaks") noted on July 20, 2006, that Plaintiff's "headaches do not stop him from going with activities [unit] on outing[s], playing volleyball, or using the weight machines on a regular basis." (Doc. # 7-3, *Page ID#* 606). This observation is consistent with notes from an activities director at Grafton Oaks, and a letter from Dr. James B. Nagle, M.D., Plaintiff's treating physician at Grafton Oaks since his head trauma in October 2005. (*Id.*, *Page ID##* 606, 610). For example, on July 17, 2006, the activities director noted that Plaintiff "is self

15

directed daily," and that he "play[s] on the resident volleyball team, attends men's night, games, outing etc." (*Id.*). A few months later, on October 16, 2006, the activities director noted that Plaintiff "has been initaiting [sic] his own activities over the last year, he spends a lot of time in talking with friends, watching tv etc." and "has been involved in activities[,] especially outings, the volleyball team, happy hour, men's night and other activities of interest." (Doc. # 7-3, *Page ID#* 608).

In a letter dated August 3, 2006, Dr. Nagle stated that Plaintiff "has been noncompliant in following my advice on many occasions," and "has been persistent in requesting prescribed analgesics at the exact time even though he has stated he gains no benefit from these." (*Id.*, *Page ID#* 610). Dr. Nagle further indicated that when Plaintiff is "taken off opiates his pain complaints seemed to be the same," but nonetheless "insisted on going to the emergency room where opiate derivatives were prescribed again." (*Id.*). Dr. Nagle indicated that "the location of [Plaintiff's] headache varies and is inconsistent normally since subdurals are not associated with much headache." (*Id.*). Regarding Plaintiff's abilities, Dr. Nagle found, consistent with notes about Plaintiff from other staff at Grafton Oaks, (*see id.*, *Page ID##* 605-08), that Plaintiff is "physically able to do whatever he wants," and "is entirely mobile, [and] . . . completely mentally intact." (*Id.*). Dr. Nagle's statements are also consistent with an "Interdisciplinary Note," dated June 20, 2006, regarding Plaintiff. (*Id.*, *Page ID#* 605). In the "Interdisciplinary Note," a licensed, certified occupational therapy assistant at Grafton Oaks noted that Plaintiff was

observed using the weight machine in the therapy room on 13 dates between February 2006 and June 2006. (*Id.*). She also noted the following about Plaintiff:

> Resident exercised his biceps, triceps, pecs, and latissimus dorsi regularly with other exercises completed irregularly using weight amounts ranging from 30# to 90#. Resident able to complete multiple sets of 10 or more reps and completed exercises very quickly and rapidly with no obvious s/sx of distress or pain, either in expression or verbally. Resident asked by this writer to please return weights to rack after lifting 90# because it was a strain to other people using the machine to remove such heavy weights. Resident agreed and complied.

(*Id.*, *Page ID#* 605).

Examination in June 2008 by Dr. Danopulos, on behalf of the Ohio Bureau of Disability Determination ("Ohio BDD") revealed pain with pressure, and restricted and painful cervical spine movements. (Doc. # 7-2, *Page ID##* 572-84). However, Dr. Danopulos also reported that Plaintiff was able to get on and off the examining table without difficulty, that bilateral straight leg raising was normal, that he could squat and arise from squatting normally, that Plaintiff walked with a normal gait without the use of ambulatory aids, and that toes-and-heel gait was normal. Dr. Danopulos also found no evidence of nerve root compression or peripheral neuropathy. (*Id.*). Dr. Danopulos noted a normal neurological examination. (*Id.*).

Moreover, treatment notes from Dr. Tabatabaian dated from October 2007 to November 2009 reflect consistently normal back and neurological examinations. (*See* Doc. # 7-2, *Page ID##* 523-24, 549-52; Doc. # 7-4, 778-88). Few neurological deficits and no atrophy detract from any claim of disabling pain. *See* 20 C.F.R. § 416.929(c)(2); *Crouch v. Secretary of Health and Human Services*, 909 F.2d 852, 857 (6th Cir. 1990);

*Blacha*, 927 F.2d at 230-31 (no atrophy and no neurological deficits supported the ALJ's finding that back pain was not disabling). The diagnostic and clinical medical evidence does not support Dr. Tabatabaian's opinion. Where a physician's conclusions regarding a claimant's capacity contains no substantiating medical data or other evidence, the ALJ is not required to credit such opinions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). The ALJ reasonably did not rely on the opinions of Dr. Tabatabaian.

The ALJ considered the record evidence, including Dr. Tabatabaian's opinion, and reasonably concluded Plaintiff had the RFC to perform medium work. The ALJ was not required to grant significant weight to this opinion because it was unsupported by objective medical findings and treatment notes. The lack of record support for Dr. Tabatabaian's opinion, along with specific examples cited in the ALJ's decision, constitutes "good reasons" for rejecting those opinions. *See Wilson*, 378 F.3d at 544 (6th Cir. 2004) (citing SSR 96-2p which explains that the ALJ's decision must contain specific reasons for the weight given an opinion supported by evidence in the record). The ALJ appropriately declined to give controlling weight to the opinion of Plaintiff's treating physician and reasonably explained her reasons for doing so. *See Stiltner v. Commissioner of Social Security*, 2007 WL 2264414 (6th Cir. Aug. 7, 2007), citing *Smith v. Commissioner of Social Security*, 482 F.3d, 873, 877 (6th Cir. 2007) (approving ALJ's decision declining to give treating sources controlling weight where ALJ's decision stated

that sources' reports were "inconsistent with the overall evidence of record" and sources formed their opinion solely from claimant's subjective symptoms).

## 2. Mental Impairments

Plaintiff alleges that he is more limited mentally than found by the ALJ. (Doc. # 9 at 14). In support of this error, Plaintiff argues that the state agency reviewing psychologist, Dr. Orosz, found greater restrictions than those found by the ALJ. (*Id.*). Specifically, Plaintiff claims that the ALJ's mental RFC determination was deficient because he did not include the need for minimal interaction with others, which would include co-workers and supervisors. (*Id.*). In addition, Plaintiff argues that the ALJ failed to address Dr. Orosz's opinion that Plaintiff needed work that was routine and in a predictable work environment. (*Id.*).

Dr. Orosz, a state agency psychologist, reviewed the file on behalf of the Ohio BDD on May 7, 2008. (Doc. # 7-2, *Page ID*## 553-70). Dr. Orosz noted Plaintiff had mild limitations in his activities of daily living and moderate limitations in his ability to maintain social functioning, concentration, persistence and pace. (*Id.*, *Page ID*## 567-68). Dr. Orosz gave weight to the objective information provided by examining psychologist, Dr. Boerger, but found some of his conclusions not to be supported by the objective information. Dr. Orosz also explained that he disagreed with Dr. Boerger's conclusion of marked limitations because they were not supported by the facts. (*Id.*, *Page ID*# 569). Dr. Orosz concluded that Plaintiff could comprehend, remember and carry out simple task instructions, but noted Plaintiff would have difficulty with detailed or

multiple step tasks due to reduced stress tolerance. Dr. Orosz reported that Plaintiff could maintain attention on simple tasks and could adapt to a setting in which duties were routine and predictable. Dr. Orosz noted that Plaintiff would "perform **optimally** in an environment with minimal interaction with others," but did not specifically find Plaintiff incapable of performing work that requires more than minimal interaction with others. (*Id.*)(emphasis added). The ALJ gave significant weight to the assessment of Dr. Orosz. (Doc. # 6-2, *Page ID#* 72). *See* 20 C.F.R. § 416.927(f)(2)(I) (ALJ considers opinions from agency physicians who are also experts in Social Security disability); *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 686 (6th Cir. 1992).

Plaintiff asserts that the ALJ found he could have only minimal contact with the general public. Whether a "minimal contact with the general public" is fundamentally different than "minimal interaction with others" is a question of semantics. Indeed, Plaintiff only suggests the difference would include supervisors and co-workers. (Doc. # 9 at 14).

The ALJ may rely on the expertise of a vocational expert to determine whether Plaintiff's RFC can be used in other occupations and in identifying the specific occupations in which that RFC may be used. 20 C.F.R. § 416.966(e). Indeed, pursuant to SSR 96-9p, vocational experts are vocational professionals who provide impartial expert opinions. In this case, when the ALJ asked the vocational expert a hypothetical question that included minimal interaction with others, the vocational expert testified to over 22,000 medium exertion, unskilled level positions that Plaintiff could perform. (Doc. #

6-2, *Page ID#* 96).  The ALJ then asked the vocational expert "if that was minimal

contact with co-workers and supervisors, would there be any particular difference in those

numbers?" (*Id.*).  The vocational expert testified that the numbers would not change.  The

vocational expert was sufficiently qualified to render an opinion about the availability of

jobs that Plaintiff could perform.  As the Commissioner argues, and this Court agrees, the

ALJ established that her RFC limitation of minimal contact with the general public was

the vocational equivalent of a restriction to minimal contact with others.  *See* Doc. # 11 at

11.

There is no requirement that the ALJ adopt the precise language offered by a

medical source, as long as the ALJ's conclusion as to a claimant's RFC is supported by

substantial evidence.  *See* 20 C.F.R. § 416.927.

Plaintiff further argues that the ALJ failed to address Dr. Orosz's opinion that

Plaintiff needed work that was routine and in a predictable work environment.  The ALJ

limited Plaintiff "to unskilled, low-stress work, defined as no assembly line production

quotas, no fast-paced work." (*See* Doc. # 6-2, *Page ID#* 60).  Any difference between

"routine/predictable work" and "unskilled, low-stress work, defined as no assembly line

production quotas, no fast-paced work," is, however, not material.  Indeed, there is ample

authority supporting this conclusion.  For example, SSR 96-9p defines unskilled work as

"understanding, remembering and carrying out simple instructions," as well as making

"simple work-related decisions." SSR 00-04p, 2000 WL 1898704 provides that unskilled

work corresponds to an SVP ("specific vocational preparation") of 1 or 2, which shows

21

that this work is easy to learn, or predictable. Plaintiff has failed to show how the ALJ erred. There is little doubt that the ALJ satisfied her obligations under SSR 96-9p and SSR 00-04p,

Finally, Plaintiff contends that Dr. Boerger and Dr. Tabatabaian found significantly greater limitations on Plaintiff's ability to work. (Doc. # 9 at 15).

Plaintiff was evaluated by state agency consulting psychologist, Alan R. Boerger, Ph.D., on April 18, 2008. (Doc. # 7-2, *Page ID##* 540-46). Dr. Boerger concluded that Plaintiff had a marked impairment in his ability to relate to and work with others. Due to the combination of his cognitive impairment, depression, and anxiety, Dr. Boerger also found Plaintiff was markedly limited in his ability to withstand the stress and pressures of daily work activity. (*Id.*, *Page ID#* 546).

As noted above, Dr. Orosz opined that Dr. Boerger's conclusions were not supported by the objective information. (*See* Doc. # 7-2, *Page ID#* 569). When weighing the opinion of Dr. Boerger, the ALJ gave "less weight" to his assessment, "as it appears he relied quite heavily on the claimant's subjective reports of symptoms and limitations." (Doc. # 6-2, *Page ID#* 72). Moreover, the ALJ found that Dr. Boerger evaluated Plaintiff shortly after he was charged with non-payment of child support, which the ALJ determined could account for Plaintiff's stress at the time of the evaluation. (*Id.*). The ALJ further determined that the assessment of Dr. Orosz represented an accurate longitudinal analysis of the objective evidence in the substantial medical evidence of record. (*Id.*). The record also contains no opinion that Plaintiff is disabled by his mental

22

impairment from any treating mental health source.  An ALJ's reliance on the opinion of a non-examining medical expert is proper if the expert's opinion is based on objective reports and opinions. *See Barker v. Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994); *Loy v. Secretary of Health and Human Services*, 901 F.2d 1306, 1308-09 (6th Cir. 2001).

Plaintiff 's treating family physician, Dr. Tabatabaian, opined in March 2008 that Plaintiff has difficulty concentrating (Doc. # 7-2, *Page ID#* 539); and in November 2009, that Plaintiff is unable perform in several areas of mental functioning.  (Doc. # 7-4, *Page ID##* 789-98).  The ALJ gave little weight to these opinions on the basis that Dr. Tabatabaian, an internist, is unqualified to offer an opinion on the Plaintiff's level of mental functioning.  (Doc. # 6-2, *Page ID#* 72).  This constituted an application of the "specialization" factor permitted by the Regulations.  *See* 20 C.F.R. § 416.927(d)(5).  Dr. Tabatabaian did not conduct a mental status evaluation or perform any psychiatric tests in forming his opinion.  In addition, Dr. Tabatabaian did not treat Plaintiff for his mental functioning issues.  Neither a treating physician's diagnosis nor his or her statement that a claimant is disabled is determinative of the ultimate disability determination under the Social Security Act.  *See Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986); *see also* 20 C.F.R. § 416.927(e)(1).

The ALJ did not err in her evaluation of Plaintiff's mental RFC, nor did she err by failing to adopt the opinion of the reviewing psychologist.

Accordingly, Plaintiff's challenges to the ALJ's decision lack merit.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The ALJ's decision and non-disability determination be **AFFIRMED**; and

2.      The case be terminated on the docket of this Court.

January 25, 2012                                        s/Sharon L. Ovington
                                                    Sharon L. Ovington
                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).